```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  UNITED STATES OF AMERICA,
                                              MEMORANDUM & ORDER
             -against-                        22-CR-408 (EK)

  CHRISTIAN SYDNEY GRIFFIN,

                        Defendant.
-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

## I.  Background

Christian Griffin was convicted of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), in 2017 in the Middle District of North Carolina.  The Hon. Loretta C. Biggs sentenced him to 70 months in custody, followed by a three-year term of supervised release.  ECF No. 1.

In September 2022, this Court accepted transfer of jurisdiction over this case for purposes of overseeing Mr. Griffin's supervised release.  On January 24, 2023 — during his supervised release term — Griffin was arrested in Massachusetts after an organized and extensive shoplifting spree.  He ultimately pleaded guilty to Charges One, Two, and Three of the Violation of Supervised Release, acknowledging his state convictions for conspiracy, receiving stolen property, and shoplifting by asportation in violation of Massachusetts General Law.  ECF No. 21.  On February 21, 2024, this Court sentenced

Griffin to 90 days in custody for the violations, to be followed by a new eighteen-month term of supervised release.  This was a below-Guidelines sentence.  Griffin surrendered to incarceration on April 8, 2024, and his scheduled release date is June 23, meaning that fewer than 15 days remain.[1]

Currently incarcerated at the Metropolitan Detention Center ("MDC"), Griffin now moves for compassionate release.  He argues that release is appropriate for two primary reasons.  First, he asserts that he was seriously injured in a violent attack while incarcerated at the MDC, and that the facility has since afforded inadequate follow-up care.  Mot. at 1, ECF 33.  Second, Mr. Griffin's stepfather recently passed away, and his funeral is imminent.  *Id.* at 1-2.  For the reasons that follow, the motion is granted.

## II.  Legal Standard

A motion for compassionate release is governed by 18 U.S.C. § 3582(c)(1)(A).  This section "permits a defendant to bring a motion for a reduction in sentence, including release from prison, in federal district court after satisfying a statutory exhaustion requirement."  *United States v. Fernandez*,

---

[1] This release date is taken from the BOP Website, *see* https://www.bop.gov/inmateloc/. (Last accessed on June 9, 2024), though it should be noted that this date would add up to 77 days in custody, including the day of surrender and release, rather than 90.

853 F. App'x 730, 731-32 (2d Cir. 2021) (summary order). Under the First Step Act, a district court may

> reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). As the quoted language indicates, this is a two-step process: the district judge first determines whether extraordinary and compelling reasons exist to modify the sentence, and if such reasons exist, the court then considers the Section 3553(a) factors in evaluating what reduction, if any, is appropriate. *See, e.g., United States v. Gotti*, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020); *United States v. Scparta*, 567 F. Supp. 3d 416, 426 (S.D.N.Y. 2020).

### III. Discussion

#### A. Exhaustion of Remedies

Section 3582 provides that a defendant may move for modification of a term of imprisonment after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Mr. Griffin concedes that he has not satisfied this requirement. The Second Circuit has held, however, that the exhaustion requirement is a claim-processing rule and not a jurisdictional

3

limitation.  *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).  Therefore, the requirement may be waived.  *Id.*  A number of district courts in this Circuit have applied the framework from *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), in the compassionate release context and waived the exhaustion requirement "where exhaustion would be futile, incapable of granting adequate relief, or would result in undue prejudice." *United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023) (collecting cases).[2]

"Courts within and outside this Circuit have waived" Section 3582's exhaustion requirement where "the time remaining in a sentence was short enough that requiring exhaustion would deny relief altogether or come close to doing so."  *Id.* at 278. Such is the case here, as requiring Mr. Griffin to exhaust would prevent him from receiving the relief he seeks.

Granting Mr. Griffin's request would shorten his sentence by only two weeks.  Administrative exhaustion would likely take longer than that, given the 30-day waiting period written into the rule, rendering his motion moot.  Beyond this, as other courts have observed, the Bureau of Prisons has generally declined to bring compassionate release motions on the

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

basis of inadequate medical care, including during the height of the COVID-19 pandemic. *See id.* at 274-76.

Additionally, Mr. Griffin's need for follow-up medical care, as discussed further below, is an immediate and pressing concern. Similarly, though less critical to the instant analysis, Mr. Griffin's interest in mourning with and comforting his family following the passing of his stepfather is a time sensitive issue. The Second Circuit has held that when "the delay attending exhaustion would subject claimants to deteriorating health," a finding of "waiver may be appropriate." *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992); *accord State of N.Y. v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990); *see also United States v. Perez*, 451 F. Supp. 3d 288, 292 (S.D.N.Y. 2020) (applying this reasoning to waive exhaustion on a motion for compassionate release, due to the movant's health risks concomitant with his incarceration). Therefore, Mr. Griffin is not precluded from compassionate release due to the failure to exhaust administrative remedies.

B.  "Extraordinary and Compelling Circumstances"

Mr. Griffin's medical needs and family circumstances present extraordinary and compelling reasons for early release. In *United States v. Brooker*, the Second Circuit held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned

5

person might bring before them in motions for compassionate release," and that courts are not constrained by the definitions and enumerated considerations in the Guidelines.  976 F.3d 228, 237 (2d Cir. 2020).  And under U.S.S.G. § 1B1.13, as recently amended, extraordinary and compelling reasons may arise from the "Medical Circumstances of the Defendant," "Family Circumstances of the Defendant," and / or "physical abuse resulting in serious bodily injury."

Griffin's counsel reports — and the government does not dispute — that in the early morning of May 16, 2024, Griffin was physically beaten by three inmates at the MDC.  The beating left him with a fracture of the right orbital bone — a broken eye socket, in layman's terms — as well as a laceration to his right eye and swelling and bruising of the eye and face.  Mot. at 5, ECF 33.  Since the attack, Mr. Griffin has been placed in a Special Housing Unit for protection, isolating him from others and restricting him to one social call a month.  Mot. at 7-8.

After being seen by a nurse at MDC, Mr. Griffin was transported to and treated at Brooklyn Hospital.  *Id.* at 6.  Upon his discharge, Mr. Griffin was informed that surgery may be needed, and his treatment plan provided for an ophthalmology consult one week later, which was scheduled for May 23, 2024.  *Id.* at 6-8.  However, rather than being seen by an ophthalmologist, the MDC canceled the appointment and provided

6

access only to an optometrist, who is not a medical doctor, despite continued swelling and pain in Griffin's face. *See* Letter at 1, ECF No. 34. In addition, Mr. Griffin was referred for a consultation with an oral surgeon, due to pain opening his jaw, but this appointment had not yet occurred as of the government's response to the instant petition (on June 7, 2024). *See* ECF No. 35; *see also, e.g.*, Medical Records, ECF 33-2 at 13.

The assault apparently occurred despite the fact that, prior to the altercation, Mr. Griffin reported to a correctional officer on his unit that he did not feel safe. Mot. at 4. He requested to be moved, but was not, and the assault occurred early the following morning. *Id.*

The *combination* of the severe injuries that Mr. Griffin sustained while incarcerated at the MDC, the facility's failure to provide follow-up care according to his prescribed treatment plan, and the added restrictions placed on him in the SHU amount to extraordinary and compelling reasons for granting the modest two-week modification of his sentence. *See United States v. Pena*, 459 F. Supp. 3d 544, 550 (S.D.N.Y. 2020) (granting compassionate release because "the need to provide the defendant with needed medical care now weigh[s] heavily in favor of [the defendant's] release").

**C.    Section 3553(a) Factors**

The Section 3553(a) factors that the Court must consider in granting or denying compassionate release include:

> the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence . . . to afford adequate deterrence; [and] to protect the public from future crimes by the defendant.

18 U.S.C. § 3553(a).  The sentence must also account for the defendant's "medical care" needs and, more generally, the need to provide "correctional treatment in the most effective manner."  At the same time, other factors in Section 3553(a) do not apply at sentencing on a violation of supervised release, including the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3583(e).

Here, the relevant 3553(a) factors counsel in favor of Mr. Griffin's release.  First, as discussed at sentencing, one of the primary factors behind the imposition of an incarceratory sentence was the need to provide adequate deterrence, given Mr. Griffin's previous recidivism.  *See* Tr. 33:18-21, ECF No. 29.  Given the events that Mr. Griffin has suffered during his term of incarceration, an additional two weeks of custody is unlikely to affect the deterrence assessment.

8

In addition, the Court noted at sentencing that Mr. Griffin was gainfully employed for a time while on supervised release. *Id.* at Tr. 33:14-15. Mr. Griffin has a home with his mother to return to and plans to begin programming at the Fortune Society, which provides re-entry services and aids formerly incarcerated persons in obtaining certifications and job placement, *id.* at Tr. 15:12-24; 19:20-21. These developments played a role in the Court's decision to impose a sentence meaningfully below the Guidelines range initially, and they militate here in favor of Mr. Griffin's modest early release.

\*   \*   \*   \*   \*

Finally, it has been well documented that the MDC has an ongoing issue with frequent lockdowns due to violence and the threat of violence, among other concerns, which has delayed medical care for a number of inmates. *See, e.g., United States v. Chavez*, No. 22-CR-303 (JMF), 2024 WL 50233, \*5-\*8 (S.D.N.Y. Jan. 4, 2024) (noting frequency of lockdowns — including as a result of violence — and of delayed medical care). Indeed, Mr. Griffin's counsel reports that her efforts to see and communicate with Mr. Griffin following the incidents at issue were delayed due to a lockdown. Mot. at 6-7, 9. Assaults in federal prison are of course criminal — *see, e.g.*, 18 U.S.C. § 113; *see also United States v. Davis*, 726 F.3d 357, 360 (2013)

9

— and yet the number of resulting investigations and prosecutions is not remotely commensurate to the apparent scope of the problem.[3] In the end, the most important part of the instant Section 3553(a) analysis is that the most "effective manner" of correctional treatment in this case did not include a fractured eye socket.

## IV. Conclusion

For the foregoing reasons, the motion for compassionate release is granted. Mr. Griffin's sentence is reduced by fourteen days, and his release is ordered forthwith. His release is to be followed by an eighteen-month term of supervised release, during which all previously imposed conditions will apply.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   June 9, 2024
         Brooklyn, New York

---

[3] *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.").